IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOHN KELL,<br><br>       Plaintiff,<br><br>vs.<br><br>FREEDOM ARMS INC., including<br>Predecessors and Successors of<br>Freedom Arms Inc., and Subsidiaries<br>and Related Business Entities; and<br>JOHN DOES 1-10<br><br>       Defendants. | CV 24–31–M–DWM<br><br><br><br>OPINION<br>and ORDER |

On October 13, 2022, Plaintiff John Kell and his father were riding in a side-by-side utility vehicle on an unpaved road outside of Libby, Montana, when the vehicle hit a bump and the Freedom Arms Model 83 pistol holstered on Kell's chest discharged. (Doc. 11 at ¶¶ 9, 10, 19–22, 65.) The bullet traveled into Kell's left arm, causing serious and permanent injuries. (*Id.* ¶¶ 23–26.) The gun belonged to Kell's father. (*Id.* ¶ 66.) It was manufactured by Freedom Arms in Freedom, Wyoming, in 2001, and sold to Kell Brothers Guns, Inc. in Elizabethville, Pennsylvania, that same year. (Doc. 16-1 at ¶ 6; *see id.* at 4, 6.)

On February 29, 2024, Kell sued Freedom Arms. (Doc. 1.) He alleges the following causes of action: (1) design defect, (2) defective warning, (3) negligence,

(4) negligent misrepresentation, (5) post-sale failure to warn, (6) breach of the implied warranty of merchantability, (7) breach of the implied warranty of fitness for ordinary use, (8) breach of the implied warranty of fitness for a particular purpose, (9) breach of an express warranty, (10) violation of the Montana Consumer Protection Act, (11) negligent design, (12) negligent manufacture, (13) negligent warning, and (14) negligent testing and inspection. (Doc. 11.)

Freedom Arms seeks to dismiss Kell's Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Doc. 15.) Failing that, Freedom Arms seeks to dismiss discrete claims under Rule 12(b)(6) for failure to state a claim. (*Id.*) Kell opposes, (Doc. 19), and has moved for leave to conduct jurisdictional discovery, (Doc. 20). Ultimately, Freedom Arms' motion to dismiss for lack of personal jurisdiction is denied, mooting Kell's motion for jurisdictional discovery. Freedom Arm's motion under Rule 12(b)(6) is granted in part and denied in part as outlined below.

LEGAL STANDARDS

## I. Rule 12(b)(2)

Dismissal for lack of personal jurisdiction may be raised in a Rule 12(b)(2) motion. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th

2

Cir. 2004). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* (internal quotation marks omitted). Although the plaintiff "cannot simply rest on the bare allegations of its complaint," uncontroverted allegations must be taken as true. *Id.* (internal quotation marks omitted). In other words, courts do not assume the truth of allegations in a pleading that are contradicted by affidavit. *LNS Enters. Ltd. Liab. Co. v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022). However, "conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (internal quotation marks and alteration omitted). Consistent with the standards applicable to Rule 12(b)(2) motions, the facts are taken from Kell's Amended Complaint, (*see* Doc. 11), as well as from the affidavits and other relevant jurisdictional evidence submitted by the parties. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995).

## II.    Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

3

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted). At this stage of the proceeding, Kell's factual allegations are assumed to be true and construed in the light most favorable to him. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021).

ANALYSIS

Freedom Arms argues there is no personal jurisdiction because the firearm that caused Kell's injury was sold in Pennsylvania, not Montana. Freedom Arms further argues that even if there is jurisdiction, certain claims are not adequately pled. Ultimately, there is personal jurisdiction and the majority of Kell's claims shall proceed to the merits.

## I.   Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). In Montana, courts apply a two-step test to determine whether they have personal jurisdiction over a nonresident defendant. *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17 (Mont. 2015). First, courts consider whether personal jurisdiction exists under

4

Montana's long-arm statute, Rule 4(b)(1) of the Montana Rules of Civil Procedure. Rule 4(b)(1) subjects parties to general jurisdiction if they are "found within the state of Montana" and to specific jurisdiction "as to any claim for relief arising from the doing personally, or through an employee or agent, of" certain enumerated acts, which in relevant part include, "the transaction of any business within Montana" and "the commission of any act resulting in accrual within Montana of a tort action." Mont. R. Civ. Pro. 4(b)(1)(A), (B). Second, courts consider whether the exercise of personal jurisdiction comports with due process. *Milky Whey*, 342 P.3d at 17. Due process "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). "The defendant . . . must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* at 359 (internal quotation marks and alterations omitted). "Accordingly, exercising specific personal jurisdiction over a defendant is only appropriate when both the defendant and the underlying controversy are appropriately affiliated with Montana." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 443 P.3d 407, 412 (Mont. 2019).

5

Here, the parties do not dispute that the Court lacks general personal jurisdiction over Freedom Arms because it is a Wyoming corporation with its principal place of business in Wyoming. (*See* Doc. 16-1 at ¶ 5); *Daimler*, 571 U.S. at 138–39. The parties disagree as to whether Freedom Arms has sufficient minimal contacts with Montana to support a finding of specific personal jurisdiction. Because it does, Freedom Arms' Rule 12(b)(2) motion is denied.

At step one, Freedom Arms' conduct falls under Montana's long-arm statute. Kell alleges that Freedom Arms designed, marketed, and sold a defective product and engaged in a litany of negligent actions. (*See* Doc. 11.) He alleges those actions resulted in the accrual of a tort action in Montana: Kell was shot by a holstered Freedom Arms Model 83 pistol. Accordingly, Kell's claims fall under Rule 4(b)(1)(B), "the commission of any act resulting in accrual within Montana of a tort action." *See Ford Motor*, 443 P.3d at 412–13. Additionally, Freedom Arms sells its firearms through a "preferred dealer" network, which includes businesses located in Missoula, Ennis, and Fort Shaw, Montana. (*See* Doc. 11-5.) Indeed, an affidavit from Freedom Arms' President Robert Baker explicitly states that "between 2015 and 2024, Freedom Arms sold a total of 22 firearms to purchasers and/or retailers in Montana, only 12 of which were Model 83 revolvers." (Doc. 16-2 at ¶ 6.) Thus, Freedom Arms is also subject to Rule 4(b)(1)(A), "the transaction of any business within Montana."

6

At the second step, presumably, Freedom Arms argues that because the firearm at issue was sold in Pennsylvania, not Montana, Kell fails to show that this case "arises out of or relates to" Freedom Arms' connections with the forum state as to comport with due process. *See Schwarzenegger*, 374 F.3d at 802.  In so arguing, Freedom Arms ignores the Supreme Court's core holding in *Ford Motor Co.*: "specific jurisdiction attaches . . . when a company . . . serves a market for a product in the forum State and the product malfunctions there," even if it is not the state of "first sale, manufacture, [or] design." 592 U.S. at 362–63.  Here, it is undisputed that Freedom Arms sells its wares through "preferred dealers" located in Montana, (*see* Doc. 11-5), and Kell's injury occurred in Montana, (*see* Doc. 11 at ¶ 9).  Because Freedom Arms, like Ford, "systematically served a market in Montana" for the same firearm that Kell alleges malfunctioned in Montana, there is "a strong relationship among the defendant, the forum, and the litigation." 592 U.S. at 365 (internal quotation marks omitted).  Contrary to Freedom Arms' position, it does not matter that the specific firearm at issue was not sold in Montana nor that Kell is not a Montana resident; rather, the focus is on Freedom Arms' activities in Montana, which undisputedly include the sale and marketing of the Model 83 revolver.

Accordingly, Freedom Arms' motion to dismiss for lack of personal jurisdiction is denied, mooting Kell's motion for jurisdictional discovery.

## II.   Failure to State a Claim

Freedom Arms further argues that most of Kell's claims should be dismissed for failure to state a claim under Rule 12(b)(6). Specifically, Freedom Arms seeks to dismiss Counts 2 through 13 of the Amended Complaint. Freedom Arms is correct as to Counts 5, 7, 9, 10, and 12.[1] Kell's other claims proceed to the merits.

### A.   Negligence – *Res Ipsa Loquitur* (Count 3)

"The doctrine of *res ipsa loquitur* permits an inference of negligence on the part of one in control of an instrumentality which causes injury when (1) the injury occurs without any fault of the injured person; (2) the instrumentality is under the exclusive control of the defendant at the time of the injury; and (3) the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care." *Romans v. Lusin*, 997 P.2d 114, 119 (Mont. 2000). Freedom Arms argues that these elements are not met here because the firearm at issue was not under its "exclusive control" at the time of the injury. However, in *Tompkins v. Northwestern Union Trust Co. of Helena*, the Montana Supreme Court

---

[1] Freedom Arms notes that while choice of law may be an issue, such an analysis would be "premature," and it is appropriate to apply Montana law here. (Doc. 16 at 16–18.) Kell does not address this issue. Where "a motion to dismiss can be decided without determining the choice of law issue, courts should and do avoid making unnecessary choice of law determinations." *Prima Exploration, Inc. v. Nova Energy, LLC*, 2023 WL 4872568, at *5 (D. Mont. July 12, 2023) ("[C]hoice of law determinations are necessary only when a difference in the law will result in a different outcome." (internal quotation marks omitted)). The outcome here is the same under Pennsylvania or Montana law.

considered the same rule statement outlined in *Romans* above and concluded that it

"is an accurate statement of the law.  However, the court did not state that

exclusive and sole control was a necessary element of a res ipsa case.  In fact it is

not."  645 P.2d 402, 406 (Mont. 1982) (analyzing language from *Whitney v.

Northwest Greyhound Lines*, 242 P.2d 257 (Mont. 1952)).  The Court further

clarified that "[e]xclusive control is merely one fact which establishes the

responsibility of the defendant; and if it can be established otherwise, exclusive

control is not essential to a res ipsa loquitur case." *Id.*  Rather, the dispositive

inquiry is whether "other responsible causes, including the conduct of the plaintiff

and third persons, are sufficiently eliminated by the evidence." *Id.* (quoting the

Restatement (Second) of Torts, § 328D(b)).  Here, Kell alleges that Freedom

Arms' Model 83 holstered pistol fired "without anyone pulling the trigger."  (Doc.

11 at ¶ 122.)  He has stated a plausible claim for negligence premised on a res ipsa

loquitur theory.  Freedom Arms' arguments to the contrary speak to the proof in

the case, not the adequacy of Kell's pleading.  Freedom Arms' motion to dismiss

Count 3 is denied.[2]

---

[2] Pennsylvania also recognizes a res ipsa loquitur claim that does not have "exclusive control" as an element. *See Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1071 n.17 (Pa. 2006) (adopting § 328D); *Bergdoll v. York Water Co.*, 2008 WL 9403180, at *7 (Pa. Commw. Ct. Apr. 1, 2008) ("[T]he doctrine of exclusive control is no longer in effect in Pennsylvania, having been replaced with the Restatement (Second) of Torts.").

**B.     Negligent Misrepresentation (Count 4)**

To establish a claim for negligent misrepresentation, a plaintiff must plead facts establishing: "(1) that the defendant made a false representation as to a past or existing material fact without any reasonable ground for believing it to be true, regardless of his or her actual belief, with the intent to induce the plaintiff's reliance; and (2) that the plaintiff, unaware of the falsity of the representation, justifiably relied on the representation and suffered damage as a result of that reliance." *Walters v. Luloff*, 176 P.3d 1034, 1038 (Mont. 2008). Freedom Arms argues that Kell has made only conclusory allegations regarding its representation and merely repackaged his product liability claim. Freedom Arms further emphasizes that there is no evidence that Kell was induced by or relied on any representations, and there is no allegation that Kell ever read or saw any marketing material. To the contrary, Kell alleges that he, in addition to his father, "factually and legally relied on Freedom Arms's false representations and omissions regarding the fire-arm being a five-shot, being designed with the best safety in mind, and having a bar safety on the firearm." (*See* Doc. 11 at ¶ 135.) And, as argued by Kell, the Amended Complaint contains a myriad of additional specific details regarding Freedom Arms' representations. (*See id.* at ¶¶ 123–40.) Freedom Arms' motion to dismiss Count 4 is denied.[3]

_____

[3] Pennsylvania's negligent misrepresentation elements are similar. *See Gongloff*

## C.   Post-Sale Failure to Warn (Count 5)

Kell alleges a claim for post-sale failure to warn, relying on the Restatement (Third) of Torts § 10.  (Doc. 11 at ¶¶ 141–52.)  Under this theory, a seller "is subject to liability for harm to persons or property caused by the seller's failure to provide a warning after the time of sale or distribution of a product if a reasonable person in the seller's position would provide such a warning."  Restatement (Third) § 10(a).  Kell indicates that such a claim has been recognized in at least seven other jurisdictions.  (*See* Doc. 11 at ¶ 146.)  Freedom Arms argues that such a claim is not cognizable in Montana because Montana product liability law requires that the product be in a defective condition at the time it leaves the manufacturer's control; i.e., "the warning must be evaluated at the time of the sale of the product at issue, and not upon some future date."  (Doc. 16 at 21.)  Kell does not dispute that this specific cause of action has not been recognized in Montana; rather, he argues that "[i]f there is any doubt that Montana would adopt this cause of action, the question should be decided in favor of recognition or certification to the Montana Supreme Court."  (Doc. 19 at 23.)  Kell's claim fails, however, on simpler grounds.

Even assuming Montana recognizes a post-sale warning claim, Kell "does not present evidence of a new and distinct danger which arose after the point of sale." *Daniel v. Coleman Co. Inc.*, 599 F.3d 1045, 1048 (9th Cir. 2010).  To the

---

*Contracting, LLC v. Robert Kimball & Assocs.*, 119 A.3d 1070, 1076 (Pa. 2015).

11

contrary, Kell argues that Freedom Arms was aware of the specifically alleged
dangers at the time of the sale and that the warning provided at that time was
inadequate. (*See* Doc. 11 at ¶ 55.) "[T]here [is] no post-sale duty to warn of a
danger already accounted for." *Daniel*, 599 F.3d at 1048; *see* Restatement (Third),
comment c. ("The seller may have known or should have known of the risk at the
time of sale, in which case failure to warn will cause the product to be defective
under § 2(c) [traditional failure to warn].").  Kell's claim fails as a matter of law.
Freedom Arms' motion to dismiss Count 5 is granted.[4]

### D.    Timeliness - Breach of Warranty Claims (Counts 6–9)

Kell has alleged four breach of warranty claims: breach of the implied
warranty of merchantability (Count 6), breach of implied warranty of fitness for
ordinary use (Count 7), breach of implied warranty of fitness for a particular
purpose (Count 8), and breach of express warranty (Count 9).  (Doc. 11 at ¶¶ 153–
75.)  Freedom Arms argues that Kell's warranty claims are untimely because they
are subject to the four-year statute of limitations governing contractual warranties,
*see* Mont. Code Ann. § 30–2–725(1), and accrued when the firearm was sold in
2001, *see* § 30–2–725(2) ("A cause of action accrues when the breach occurs,
regardless of the aggrieved party's lack of knowledge of the breach.").  However,

---

[4] Pennsylvania has explicitly rejected the Restatement (Third) § 10.  *See DeSantis
v. Frick Co.*, 745 A.2d 624, 632 (Pa. Super. Ct. 1999).

because there is no contract and Kell's warranty claims are based on covenants that "are imposed by law regardless of contract," they are subject to "the three-year tort statute of limitations" outlined in § 27–2–204(1). *Bennett v. Dow Chemical Co.*, 713 P.2d 992, 995 (Mont. 1986). That period generally beings to run "when all elements of the claim or cause exist or have occurred." § 27–2–102(1)(a). And because an essential element of Kell's claim, his injury, did not occur until October 2022, his claim did not accrue until that time. *See Lee v. Wolfson*, 265 F. Supp. 2d 14, 17 (D.D.C. 2003) ("Generally, a cause of action accrues for the purposes of the statute of limitations at the time the injury actually occurs."). Freedom Arms' motion to dismiss Kell's warranty claims as untimely is denied.[5]

### E.   Breach of the Implied Warranty of Merchantability (Count 6)

Pursuant to § 30–2–314(1), "a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Here, Kell alleges a breach of the implied warranty of merchantability because the firearm at issue "is not fit to be sold as will be demonstrated by the evidence including because it lacks a transfer bar, cannot be safely used as the five-shot it is advertised as, and is unfit for use or sale absent

---

[5] Pennsylvania likewise allows a plaintiff to pursue a tort-based warranty claim, *see Williams v. W. Penn Power Co.*, 467 A.2d 811, 818 (Pa. 1983), and "[a] tort cause of action generally accrues on the date of the accident or injury," *Gibson v. Com.*, 415 A.2d 80, 83 (Pa. 1980).

13

redesign and/or improved warning." (Doc. 11 at ¶ 155.) Freedom Arms argues that this allegation is insufficient because it lacks facts regarding the sale, Kell was not the actual purchaser of the firearm, and "the facts as pleaded establish that the firearm was fit for its ordinary purposes as it was owned and utilized without incident for over twenty years." (Doc. 16 at 22.) Not so. As stated above, Kell alleges specific facts undermining the fitness of the firearm at issue. Moreover, under Montana law, "[a] seller's warranty whether express or implied extends to any natural person who is in the family or household of the buyer or who is a guest in the buyer's home if it is reasonable to expect that the person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." Mont. Code Ann. § 30–2–318. Thus, Kell himself need not be the purchaser. Finally, Freedom Arms' contention that the firearm operated as intended for twenty years goes to the merit of Kell's claim, not the plausibility of his pleading. Freedom Arms' motion to dismiss Count 6 is denied.[6]

**F.    Breach of the Implied Warranty of Fitness for Ordinary Use (Count 7)**

Kell alleges that Freedom Arms has warranted that its pistols, including the Model 83 at issue here, are "fit for defense against dangerous animals, self-

---

[6] This is consistent with Pennsylvania law, which permits implied warranty of merchantability claims in the product liability context and allows "any party injured by the defective product" to "sue any party in the distributive chain." *See French v. Commonwealth Assocs., Inc.*, 980 A.2d 623, 633 (Super. Ct. Pa. 2009).

defense, and silhouette/competition use," which "are ordinary uses for a firearm of this type" despite their safety issues. (Doc. 11 at ¶ 159.) However, Freedom Arms correctly argues that this claim is duplicative of Kell's implied warranty of merchantability claim and "the Amended Complaint lacks factual allegations establishing the creation or breach of an implied warranty of fitness for the ordinary purpose." (Doc. 16 at 23.) "Fitness for ordinary use" is merely a characteristic of a "merchantable" good under § 30–2–314, the statute governing implied warranties of merchantability. *See* § 30–2–314(2)(c). Moreover, Kell makes no attempt to save this claim. (*See* Doc. 19 at 29 (arguing that he has adequately pled "[i]mplied warranty of fitness *for a particular purpose*," which is a distinct claim).) Freedom Arms' motion to dismiss Count 7 is granted.[7]

### G.   Breach of the Implied Warranty of Fitness for a Particular Purpose (Count 8)

Pursuant to § 30–2–315, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." Here, Kell alleges that Freedom Arms:

> warrants its pistols, including the subject Model 83, are designed, and fit for the particular purposes of defense against dangerous animals,

---

[7] Pennsylvania also equates implied warranty of merchantability with fitness for an "ordinary purpose." *See French*, 980 A.2d at 933.

self-defense, and silhouette/competition use.  The express warranties
were breached by the design, limitations, characteristics, and dangers
posed by the Model 83.  There are also certain safety features intrinsic
to these uses that the Model 83 does not have but warrants that it does.
This includes the lack of a transfer bar.

(Doc. 11 at ¶ 163.)  Freedom Arms argues that this claim is defective because it is

"boilerplate" and "[t]he Amended Complaint is silent regarding any particular

purpose for which the firearm was originally purchased from Freedom Arms."

(Doc. 16 at 24.)  But Kell has alleged that Freedom Arms explicitly warranted the

Model 83 for the listed purposes.  (*See* Doc. 11 at ¶ 163.)  Freedom Arms' motion

to dismiss Count 8 is denied.[8]

### H.    Breach of Express Warranty (Count 9)

Under Montana law, an express warranty is created when there is an

"affirmation of fact or promise made by the seller to the buyer which relates to the

goods and becomes part of the basis of the bargain" or a "description of the goods

which is made part of the basis of the bargain" or a "sample or model which is

made part of the basis of the bargain."  Mont. Code Ann. § 30–2–313.  Freedom

Arms argues that "the Amended Complaint does not cite any affirmation of fact or

promise, provide a description of the goods, or identify a sample made by Freedom

Arms that became a basis of the bargain."  (Doc. 16 at 25.)  In response, Kell

---

[8] Pennsylvania likewise recognizes a claim for breach of the implied warranty of
fitness for a particular purpose. *See Oppenheimer v. York Int'l*, 2002 WL
31409949, at *4 (Ct. Comm. Pleas Pa. Oct. 25, 2002).

argues that Freedom Arms' express warranties were "that the subject firearm is a five-shot and has a 'bar safety.'" (Doc. 19 at 30; *see* Doc. 11 at ¶ 169.) And, according to Kell, these warranties were made in the "materials shipped with the firearm." (Doc. 11 at ¶ 171.) While these allegations are sufficient to identify the statements that Kell believes created a warranty, "[t]here can be no express warranty without reliance." *Woodahl v. Matthews*, 639 P.2d 1165, 1168 (Mont. 1982). Nowhere in the allegations associated with this cause of action does Kell allege he was aware of these statements at the time or relied on them in deciding to purchase the firearm. Freedom Arms' motion to dismiss Count 9 is granted.[9]

## I.     Montana Consumer Protection Act (Count 10)

The Montana Consumer Protection Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mont. Code Ann. § 30–14–103. "[A]n unfair act or practice is one which offends established public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rohrer v. Knudson*, 203 P.3d 759, 764 (Mont. 2009). "A deceptive act is one that is likely to mislead consumers." *Young v. Era Advantage Realty*, 513 P.3d 505, 513 (Mont. 2022) (internal quotation marks omitted). "False representations as to the

---

[9] The absence of an allegation of reliance dooms Kell's claim under Pennsylvania law as well. *See Oppenheimer*, 2002 WL 31409949, at *3.

characteristics, use, or benefits of what is being sold may constitute a deceptive act." *Id.* (internal quotation marks and alteration omitted). "Neither an intent to deceive nor knowledge of a statement's falsity is required to establish a deceptive act or practice under the [Act]." *Id.* To bring a cause of action under the Act, a plaintiff must show: (1) the defendant used or employed an unfair or deceptive act or practice in the conduct of any trade or commerce; (2) the claimant was a consumer as defined by the Act, and (3) as a result, the claimant suffered a direct or indirect financial detriment. *Kostelecky v. Peas in a Pod, LLC*, 518 P.3d 840, 861 (Mont. 2022).

Freedom Arms argues that Kell's consumer protection claim is subject to a heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure and, regardless, fails to allege all three elements identified above. Although Kell does not directly address the appropriate pleading standard, he insists his claims are sufficient, specifically focusing on his standing to bring a claim under the Act as a "consumer." Whether Kell, or a non-purchaser user, is a "consumer" under the Montana Unfair Trade Practices Act has not been addressed by the Montana Supreme Court. Even if he is, however, his claim fails as a matter of law because he fails to allege that Freedom Arms' representations were "the cause-in-fact of h[is] damages." *Young*, 513 P.3d at 514. Although Kell alleges that he was "entitled to rely upon Freedom Arms's advertisements and marketing

18

and statements," (Doc. 11 at ¶ 184), he does not actually allege that he did so. Nor can he; the Model 83 at issue was purchased by his father. (*See id.* ¶ 66.) "[D]etrimental reliance and causation are essential elements of a [Montana Consumer Protection Act] claim." *Guthridge v. Johnson & Johnson Corp.*, 2023 WL 6626175, at *5 (D. Mont. Sept. 22, 2023) (discussing *Anderson v. ReconTrust Co., N.A.*, 407 P.3d 692, 700 (Mont. 2017)). Here, the Amended Complaint does not allege any facts associated with this cause of action from which it can be inferred that Kell, or even his father, relied on any of the identified representations made by Freedom Arms or that those representations resulted in Kell's ultimate injury. As such, Kell fails to a state a claim under the Act, and Freedom Arms' motion to dismiss Count 10 is granted.[10]

## J.    Negligent Manufacture (Count 12)

Kell alleges that "Freedom Arms had a duty to act as a reasonable person under the circumstances when manufacturing the Model 83 revolver" and that it breached that duty by:

> manufacturing a product with materials or parts that are supposed to act as a safety, but either due to their design, materials used for the design, or the assembly of the product does not act as an adequate safety . . . .

---

[10] Pennsylvania also has an Unfair Trade Practices and Consumer Protection Law, *see* 73 P.S. §§ 201–1, *et seq.*, that includes as an "unfair or deceptive act[] or practice[,]" *inter alia*, "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," § 201–2(4)(xxi). But a plaintiff must prove justifiable reliance. *See Hena v. Vandegrift*, 612 F. Supp. 3d 457, 485 (W.D. Pa. 2020).

> These include half cock safety features that are unable to function as
> safety features at all because of the quality, assembly, or design. These
> also include the bar safety feature that are unable to act as safety
> features because of their quality, assembly, or design.

(Doc. 11 at ¶¶ 215, 217.)  Freedom Arms argues that while this allegation may

support a claim for defective design, it does not establish that the Model 83 was

defectively manufactured.  Kell indeed conflates design-based claims with

manufacturing-based claims.  Kell does not allege that the Model 83 revolver at

issue was the product of a one-off assembly or production error.  Nor does he

allege that someone at Freedom Arms forgot to, for example, calibrate the machine

that bore the barrel.  Rather, Kell consistently argues that it is Freedom Arms'

design choices that resulted in his injuries.  Such a claim, whether based in

negligence or product liability, does not implicate a manufacturing error.  Indeed,

> [m]anufacturing defects, by definition, are imperfections that inevitably
> occur in a typically small percentage of products of a given design as a
> result of the fallibility of the manufacturing process.  A defectively
> manufactured product does not conform in some significant aspect to
> the intended design, nor does it conform to the great majority of
> products manufactured in accordance with that design.   Stated
> differently, a defectively manufactured product is flawed because it is
> misconstructed without regard to whether the intended design of the
> manufacturer was safe or not.  Such defects result from some mishap in
> the manufacturing process itself, improper workmanship, or because
> defective materials were used in construction.

*Rix v. Gen. Motors Corp.*, 723 P.2d 195, 200 (Mont. 1986) (internal quotation

marks, citations, and alterations omitted).  This is not the focus of Kell's claim.  To

the contrary, the allegations in Kell's purported negligent manufacturing claim are

20

almost identical to those alleged in his negligent design claim. (*See* Doc. 11 at

¶¶ 210, 217.)  Freedom Arms' motion to dismiss Count 12 is granted.[11]

### K.    Failure to Warn (Counts 2, 13)

Kell alleges that Freedom Arms is liable for failure to warn under both strict

liability (Count 2) and negligence (Count 13) theories.  Freedom Arms argues that

both causes of action should be dismissed because Kell alleges only boilerplate

statements as to the warnings' inadequacies.  Freedom Arms also appears to take

the position that a design defect and a failure to warn claim are mutually exclusive

because to proceed on the latter, it must be the lack of warning that renders the

product defective, not its design.  Contrary to Freedom Arms' second contention,

plaintiffs in product liability actions regularly pursue both causes of action.  *See,*

*e.g.*, *Krueger v. Gen. Motors Corp.*, 783 P.2d 1340, 1345, 1348 (Mont. 1989);

*Riley v. Am. Honda Motor Co., Inc.*, 856 P.2d 196, 197 (Mont. 1993); *Patch*, 257

P.3d at 386;  *Ford Motor Co.*, 443 P.3d at 411.  Moreover, Kell's pleadings are

sufficient because they specifically allege the warning that was provided in the

manual "com[es] after and [is] surrounded by other far less important information,

and is not prominently displayed."  (Doc. 11 at ¶ 55.)  Kell further alleges that

"[t]his warning lacks the specificity of the danger, lacks clarity in what it is

---

[11] A manufacturing defect in Pennsylvania is "a breakdown in the machine or a component thereof."  *Riley v. Warren Mfg., Inc.*, 688 A.2d 221, 224 (Pa. 1997).

warning against, [and] is vague and unclear." (*Id.*) Kell also clarifies that the primary concern is Freedom Arms' failure to warn of the risk of "unintentional discharge." (*See id.* ¶¶ 228–30.) Freedom Arms' motion to dismiss Counts 2 and 13 is denied.[12]

### CONCLUSION

Based on the foregoing, IT IS ORDERED that Freedom Arms' motion to dismiss (Doc. 15) is GRANTED as to Counts 5, 7, 9, 10, and 12, and DENIED in all other respects.

IT IS FURTHER ORDERED that Kell's motion for jurisdiction discovery (Doc. 20) is DENIED as MOOT.

DATED this 9th day of September, 2024.

Donald W. Molloy, District Judge
United States District Court

---

[12] Pennsylvania's products liability framework is similar to Montana's. *See Phillips v. A-Best Products Co.*, 665 A.2d 1167, 1170–71 (Pa. 1995) ("There are three different types of defective conditions that can give rise to a strict liability claim: design defect, manufacturing defect, and failure-to-warn defect.").